**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

DOROTHY LEWIS,

        Plaintiff,

    vs.                            Case No. 07-4011-KGS

U.F.C.W. DISTRICT UNION LOCAL TWO AND
EMPLOYERS PENSION FUND,

        Defendant.

**MEMORANDUM AND ORDER**

    This matter comes before the court upon defendant's Motion for Summary Judgment (Doc. 7) and Memorandum in Support (Doc. 8). Plaintiff filed her own Motion for Summary Judgment (Doc. 17) and Memorandum in Support (Doc. 18) which also serves as her response to defendant's motion. Defendant filed has a reply (Doc. 20) in support of its own motion to which plaintiff has filed a "surreply" (Doc. 21). In turn, defendant filed a Motion for Leave to File a Surreply (Doc. 22) to which plaintiff filed a second "surreply" (Doc. 23).[1] The court finds these matters fully briefed and ripe for disposition.

    Defendant's Motion for Summary Judgement seeks (1) the dismissal of plaintiff's claims for failure to exhaust her administrative remedies and (2) based on the undisputed facts, judgment in favor of defendant on the merits. Plaintiff's Motion for Summary Judgment seeks denial of defendant's motion as well as compensatory damages based on plaintiff's claims.

---

    [1]Despite the parties' somewhat confusing briefing, the court construes plaintiff's first surreply (Doc. 21) as a reply in support of her own Motion for Summary Judgment. Defendant's reply (Doc. 20) also constituted a response to plaintiff's motion, meaning plaintiff is entitled to a reply. Moreover, the court further construes plaintiff's second surreply (Doc. 23) as her response to defendant's Motion for Leave to File Surreply (Doc. 22).

As detailed below, the court denies plaintiff's Motion for Summary Judgment and grants defendant's Motion for Summary Judgment to the extent it seeks dismissal of plaintiff's claims for failure to exhaust her administrative remedies.  Because dismissal of plaintiff's claims for failure to exhaust is warranted, the court need not, and will not, address the merits of plaintiff's claims.

I.      **Preliminary Issue: Timeliness of defendant's reply brief.**

Plaintiff's first surreply (Doc. 21) contends that defendant's reply in support of its Motion for Summary Judgment is untimely.  The clerk's office received plaintiff's Motion for Summary Judgment and Memorandum in Support, which also served as plaintiff's response to defendant's motion, on April 23, 2007 and file stamped it accordingly.  Plaintiff's certificate of service also states she mailed her motion and accompanying memorandum to defendant on April 23, 2007.  However, the clerk's office physically entered plaintiff's Motion for Summary Judgment and Memorandum in Support on the docket on April 26, 2007.[2]  Defendant filed its reply brief on May 21, 2007.

In its Motion for Leave to File Surreply, defendant states that plaintiff hand delivered to defendant a copy of her Motion for Summary Judgment on April 23, 2007, but failed to include the 17 exhibits in support.  As a result, defendant contends it only received a *complete* copy of plaintiff's Motion for Summary Judgment via electronic service from the court on April 26, 2007, when the clerk's office actually docketed plaintiff's motion.[3]  As a result, defendant calculated its twenty-three

---

[2]*See* (Docs 17 and 18) both file-stamped received on April 23, 2007); *but see* Docket text of Docs. 17 and 18 ("Entered 4/26/07").

[3]Motion for Leave to File Surreply (Doc. 22) at p. 1.

2

(23) day reply period from April 26, 2007 which would make its May 21, 2007 reply brief timely.[4]

In her second surreply (Doc. 23) plaintiff states she met with counsel for defendant on April 23, 2007 and provided him with a courtesy copy of her motion, but did not include her exhibits and "indicated to him . . . he could review those exhibits on-line by accessing Pacer."[5]

Under D. Kan. Rule 6.1(d)(2), a reply in support of a dispositive motions "shall be filed and served within 23 days of *service* of the response." D. Kan. Rule 5.4.9 provides in part "[t]he notice of electronic filing that is automatically generated by the court's Electronic Filing System constitutes service of the filed document on all parties who have consented to electronic service."[6]   Based on the language of this rule, the court construes the date defendant received the complete response, i.e., April 26, 2007 as the date defendant was actually served with plaintiff's motion.

D. Kan. Rule 5.4.3, governing the Consequences of Electronic Filing, provides in part "Except in the case of documents filed first in paper form and subsequently submitted electronically, a document filed electronically is deemed filed at the date and time of the Notice of Electronic Filing from the court."

Here, it is clear plaintiff's motion and accompanying memorandum and exhibits in support were filed in paper form on April 23, 2007. However, it is the *service* of plaintiff's complete motion that initiates the twenty-three (23) day reply period. Because it is clear that defendant was not served with a complete motion and accompanying memorandum until April 26, 2007, the court

---

[4]Because the 23rd day from April 26, 2007 fell on  May 19, 2007, a Saturday, defendant's filing the following Monday, or May 21, 2007, was timely.  *See* Fed. Rule Civ. P. 6(a).

[5]Surreply (Doc. 23) at p. 2.

[6]The response and reply time periods under D. Kan. Rule 6.1(d) include the additional three day period allowed under Fed. Rule Civ. P. 6(e) for electronic service authorized under Fed. Rule Civ. P. 5(b)(2)(D).

calculates defendant's reply time period from that date and finds plaintiff's May 21, 2007 reply brief timely.

## II.    Facts

The following facts are either uncontroverted or, if controverted, construed in the light most favorable to the non-moving party.[7]  Immaterial facts and factual averments not properly supported by the record are omitted.[8]

The U.F.C.W. District Union Local Two and Employers Pension Fund–Retail Clerks Plan ("the Plan") is maintained under the Agreement and Declaration of Trust of the U.F.C.W. District Union Local Two and the Employers Pension Fund ("the Fund").  The "Plan Document" titled U.F.C.W. District Union Local Two and Employers Pension Fund–Retail Clerks Plan sets forth the Plan's controlling terms.[9]  The Summary Plan Description ("the SPD") summarizes the Plan Document's provisions.[10]

The Plan Document provides for several pension options.  However, the amount due any individual pension recipient under *any* option varies by the amount of benefit credits the employee

---

[7]While this order disposes of cross-motions for summary judgment, the court, in first evaluating defendant's motion for summary judgment, construes controverted facts in the light most favorable to plaintiff.

[8] For example, the court notes that plaintiff's Motion for Summary Judgment only seeks to controvert defendant's undisputed facts Nos. 7, 11, 13, 14, 15, 19, 20, 22 , 23 and 24.  Plaintiff did not number by paragraph each fact in dispute and, aside from citing the undisputed facts of defendant listed above, did not "state the number of the movant's fact that is disputed." *See* D. Kan. Rule 56(b)(2).  Because plaintiff did not specifically controvert the remaining statements by defendant, these "material facts set forth" by defendant "shall be deemed admitted for the purpose of summary judgment." *See* D. Kan. Rule 56(a) and (b).

[9]*See* Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. 8) at (Exhibits 1 and 14).

[10]*Id.* at (Exhibits 1 and 2).

has earned.  An individual pension recipient earns these benefit credits based on the years of work for contributing employers and the amount of total hours worked each year.  The standard form of pension, the Single Life Option, provides monthly payments for life.  Other alternative pension options are intended to be actuarially equivalent to the Single Life Option.

The Level Income Option actuarially increases the amount of monthly payments during the period before the recipient is eligible for social security old age insurance benefits such that the recipient will receive, as closely as possible, the same monthly payment before and after age 62, the earliest age when social security payments may begin.  Specifically, the SPD states:

> Level Income Option.  You may choose an option that coordinates your pension with your Social Security benefit.  If you leave covered employment between ages 55 and 62, which is the earliest age you may receive Old-Age Insurance Benefits under the Social Security Act, you may elect to receive your benefits from the Plan under the "level income option." The level income option provides as closely as possible for the level lifetime pension from the combined benefits of the Plan and Social Security.  You may receive larger monthly payments from the Plan during the period before your Social Security retirement benefits commence, and then smaller monthly payments (or even none at all) thereafter.  Under this option, your monthly payments from the Plan will be reduced effective the same month you begin receiving your Social Security retirement benefits.

The Plan Document and the SPD provide for a two-level Claims and Appeals Procedure, wherein the Plan Administrator decides any claims and the Plan Trustees decide any appeals.  The Plan Document also affords the Plan Trustees the power to construe the Plan.

Plaintiff worked, often on a part-time basis, as a retail clerk at Four B Corporation/Balls Food Stores (d/b/a Hen House and Price Chopper) between 1996 and 2005.  On or around May 19, 2005, plaintiff requested information on early retirement.  Judy Tuck, the Plan Administrator, ("Ms. Tuck" or "the Plan Administrator ") responded to plaintiff's information request in a June 6, 2005 letter.  This letter provided plaintiff with estimates of monthly pension payment options under the

Single Life Option and included the SPD as an enclosure.[11]  On August 5, 2005, plaintiff informed the Plan she wanted to retire early.  In response, the Plan Administrator sent plaintiff a letter on August 16, 2005, providing plaintiff with certain retirement information.

On or around September 2, 2005, the Plan received plaintiff's application for retirement benefits.  This application indicated plaintiff requested payment of her pension benefit under Level Income Option, rather than the Single Life Option.[12]  Defendant contends that "[a]fter gathering the necessary information and making the appropriate calculations, the Plan sent the Final Application for Benefits to Plaintiff" wherein the payment amount was calculated by both the Plan Administrator and a separate actuary using the step-by-step procedures outlined in the Plan Document.[13]  On November 7, 2005, the Plan received the complete and signed Final Application wherein plaintiff confirmed she wished to choose the Level Income Option.[14]  In this Final Application, plaintiff signed a statement acknowledging:

> Under this option, beginning November 1, 2005, and continuing through the payment made as of the first day of November 2008[15], I will receive $518.38 per month from the Plan.  As of the first day of the next month, December, 2008, I will receive $00.00 per month for the rest of my life.  Payments will be made only during my lifetime.[16]

As of November 1, 2005 to the present, plaintiff has received monthly payments for $518.38 from

---

[11]*Id.* at (Exhibit 4).

[12]*Id.* at (Exhibit 7).

[13]*Id.* at p. 4.

[14]*Id.* at (Exhibit 8).

[15] The date plaintiff would become eligible for social security old age insurance benefits.

[16]Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. 8) at (Exhibit 8).

the Plan.

On June 16, 2006, plaintiff wrote Ms. Tuck a letter inquiring as to why her payment under the Level Income Option was $513.38 per month, when her estimated monthly old age insurance benefit payment in the Social Security Administration's annual statement was $820 per month.[17] On June 23, 2006 the Plan Administrator sent plaintiff a letter in response which stated in part "[t]he result is that calculation is lowered to an amount less than the $820.00 which is based on your *lifetime* of employment. The benefit you are drawing from this Trust Fund [of $513.38] is based on *credits you accrued* from 1996 through 2005, and is available to you through the November 1, 2008 benefit payment." [18] This letter provided a yearly break-down of plaintiff's hours work and benefit credits accrued.

On October 2, 2006, plaintiff again inquired about the Plan's $518.38 calculation as evidenced by a "Pension Info Request" form.[19] On October 17, 20006, the Plan Administrator sent plaintiff a letter explaining that the Social Security Administration's estimated benefit ($820) is based on "a layering of monies received on your behalf by multiple employers over your *working lifetime*" using their own factors, while plaintiff's benefit from the Trust "is only based on your covered employment from 1996 through 2005."[20] On October 24, 2006, the Plan Administrator

---

[17]*See* Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. 8) at (Exhibit 9); Memorandum in Support of Plaintiff's Motion for Summary Judgment (Doc. 18) at (Exhibit G).

[18]*See* Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. 8) at (Exhibit 10)(emphasis added).

[19]*Id.* at (Exhibit 11).

[20]*Id.* at (Exhibit 12)(emphasis in original).

7

provided plaintiff with the documentation used in calculating plaintiff's benefits.[21]

Before filing the instant action, plaintiff never made a formal claim for a larger monthly pension payment or filed an appeal for a larger monthly pension payment. Plaintiff did send several letters to the U.S. Department of Labor and sent a letter of the Internal Revenue Service regarding her benefit amount.

On January 18, 2007, plaintiff initiated the present action. Plaintiff's complaint states she brings the instant action based on "28 U.S.C. 1332 (Diversity)"[22] and alleges:

> Plaintiff was eligible and elected to apply for early retirement at 59 years of age on September 2, 2005 according to the terms and conditions of the pension plan. My pension should be based upon and calculated equal to my social security benefit, but lower payments are being distributed. Eventually, did discover that the terms of my pension plan are deceptive and fraudulent, nor is it a lifetime benefit plan. Instead, it is a plan that has been calculated for a term of only three years, which is equivalent to a severance payment plan.[23]

In response to the standard complaint form as to why plaintiff did not seek administrative review of her claims, plaintiff's complaint states:

> On several written and oral occasions had contacted Judy Tuck, Plan Administrator about having applied for a lifetime pension plan, instead [I am] receiving benefits from a short-term plan of three years. Also, had complaint about the monthly pension payments that are not equal to my social security benefit as described in the pension plan.[24]

---

[21]*Id.* at (Exhibit 13).

[22]*See* Complaint (Doc. 1) at p. 3-4. *See also* Memorandum in Support of Plaintiff's Motion for Summary Judgment (Doc. 8) at p. 1.

[23]*Id.*

[24]*Id.* at p. 6.

### III.    Standard

First, as a general matter, the court notes it is mindful that plaintiff is proceeding *pro se* and thus her filings should be liberally construed and held to a less stringent standard.[25]  This requires the court look past any confusion of legal theories or a failure to cite proper legal authority.[26]  Despite this liberal construction, "the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."[27]

Fed. R. Civ. P. 56(b) provides that a defendant may move for summary judgment "at any time."    Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[28]  For the purpose of reviewing a summary judgment motion, a factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."[29]  A "genuine" issue of fact exists where "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[30]

The moving party bears the initial burden of demonstrating the absence of a genuine issue

---

[25]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[26] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[27] *Id.*

[28] Fed. R. Civ. P. 56(c).

[29] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[30] *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248).

of material fact.[31]  To meet this standard, the moving party does not need to negate the claims of the non-movant; instead, the moving party can simply point out the absence of evidence for the non-moving party on an essential element of that party's claim.[32]  Once the moving party satisfies this initial burden in a properly supported motion, the burden shifts to the non-moving party to show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."[33]  The non-moving party may not rest on mere allegations or denials in its response in opposition to summary judgment, but "must set forth specific facts showing that there is a genuine issue for trial."[34]  Therefore, the mere existence of some alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment.[35]  The court must consider the record in the light most favorable to the non-moving party.[36]   However, in a response to a motion for summary judgment, "a non-moving party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment on the mere hope that something will turn up at trial."[37]

---

[31] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  *See also Doebele v. Sprint Corp.*, 157 F.Supp.2d 1191, 1195 (D. Kan. 2001); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991).

[32] *Adams v. Am. Guarantee & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000).

[33] *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990).

[34] *Liberty Lobby*, 477 U.S. at 256.

[35] *Id.*

[36] *See Doebele*, 157 F. Supp.2d at 1195.  *See also Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir. 1991).

[37] *Zapata v. IBM, Inc.,* 1998 U.S. Dist. LEXIS 21702 *17 (D. Kan. September 29, 1998)(citing *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988)).

## IV.    Discussion

The court construes plaintiff's complaint to claim (1) violations of 29 U.S.C. § 1132(a)(1)(B), Employee Retirement Income Security Act, ("ERISA") § 502(a)(1)(B) which allows a participant or beneficiary to file a civil action "to recover benefits due h[er] under the terms of the plan, to enforce h[er] rights under the terms of the plan, or to clarify h[er] rights to future benefits under the terms of the plan" and (2) common law fraud.

### A.    Preliminary Issue: Preemption[38]

Plaintiff's claim does not mention ERISA specifically, however a claimant "cannot sidestep the legal consequences of [her] substantive allegations simply by avoiding explicit reference to a particular ERISA plan in [her] pleading."[39]  While plaintiff does not expressly argue that ERISA is inapplicable to her action[40], plaintiff states in both her complaint and motion for summary judgment that this court's jurisdiction rests solely on diversity grounds of her state law claim,[41] namely fraud. However, as discussed below the court finds ERISA preempts plaintiff's common law claim of fraud.

The administration of the Plan at issue is governed by ERISA.[42]  Plaintiff's complaint also

---

[38]Defendant's Memorandum in Support of its Motion for Summary Judgment "does not abandon" its argument that "ERISA preempts Plaintiff's common law fraud claim[.]"  *See* Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. 8) at p. 9.

[39]*Karls v. Texaco, Inc.*, 139 Fed. Appx. 29, 31 at n. 1 (10th Cir. 2005).

[40]In fact, plaintiff cites provisions of ERISA or case law addressing ERISA in her Memorandum in Support of her Motion for Summary Judgment. *See* Memorandum in Support of Plaintiff's Motion for Summary Judgment (Doc. 8) at p. 2, 5, 8, 13, 14.

[41]*See* Complaint (Doc. 1) at p. 4.

[42]*See* 29 U.S.C. § 1002(1).

contains allegations of fraud.[43]  ERISA expressly provides that it's provisions "shall supersede any and all State laws insofar as they may now or hereafter related to any employee benefit plan" covered by ERISA.[44]  Preemption under ERISA is "deliberately expansive"[45] and under this expanse it is well settled that "[c]ommon law tort . . . claims are preempted by ERISA if the factual basis of the cause of action involves an employee benefit plan."[46]  To that end, the Tenth Circuit affirmed a lower court's "undeniably correct" finding that ERISA preempted a plaintiff's claims alleging "fraud with an intent to deprive plaintiff of retirement benefits[.]"[47]

Here, plaintiff has alleged fraud in terms and administration of her employee benefit plan. Because the factual basis of plaintiff's cause of action for fraud involves her employee benefit plan, ERISA preempts her common law tort claim.  As a result, the court finds plaintiff's common-law claim of fraud preempted by ERISA[48] and will address plaintiff's claims in that context.

---

[43] *See* Complaint (Doc. 1) at p. 4  ("Eventually, did discover that the terms of my pension plan are *deceptive and fraudulent*, nor is it a lifetime benefit plan.")(emphasis added).

[44]29 U.S.C. § 1144(a).

[45]*Airparts Co. v. Custom Benefits Servs. of Austin, Inc.*, 28 F.3d 1062, 1065 (10th Cir. 1994).

[46]*Settles v. Golden Rule Ins. Co.*, 927 F.2d 505, 509 (10th Cir. 1991); *Pacificare of Oklahoma, Inc., v. Burrage*, 59 F.3d 151, 155 (10th Cir. 1995) (finding claim "alleging negligent or fradulent administration of [benefit] plan is preempted by ERISA").  *See also Karts v. Texaco, Inc.*, 139 Fed. Appx. 29, 32 (10th Cir. 2005)(calling this rule "well-established").

[47]*Milton v. Scrivener, Inc*., 53 F.3d 1118, 1121 at n. 13 (10th Cir. 1995).

[48]*See Randles v. Galichia Med. Group, P.A.*, No. 05-1374-WEB, 2006 U.S. Dist. LEXIS 92428 at *42 (D. Kan. Dec. 18, 2006) ("plaintiff's allegations that the defendants conspired to "deceive, harm, and injure" him are preempted insofar as they are based on state law.").

**B.      Failure to Exhaust Administrative Remedies**

Defendant's Motion for Summary Judgment  asks the court to "dismiss plaintiff's claim for failure to exhaust administrative remedies[.]"[49]

In ERISA cases, the Tenth Circuit has held that "exhaustion of administrative (i.e., company or plan-provided) remedies is an implicit prerequisite to seeking judicial relief."[50]  This exhaustion doctrine derives from all judicial review of actions by administrative agencies and "aligns with ERISA's overall structure of placing primary responsibility for claim resolution on fund trustees."[51] Without the exhaustion requirement, "premature judicial interference with the interpretation of a plan would impede those internal processes which result in a completed record of decision making for a court to review."[52]  Essentially, the doctrine "is necessary to keep from turning every ERISA action, literally, into a federal case."[53]

**1.      Plaintiff failed to file an administrative claim.**

First, plaintiff failed to plead that she has exhausted her administrative remedies, or that such exhaustion would prove futile[54] in her complaint.  Similarly, plaintiff never sought to amend her

---

[49]Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. 8) at p. 10.

[50]*Whitehead v. Oklahoma Gas & Elec. Co.*, 187 F.3d 1184, 1190 (10th Cir. 1999)(citation omitted).

[51]*Id.*

[52]*Id.* (citing *McGraw v. Prudential Ins. Co. of America*, 137 F.3d 1253, 1263 (10th Cir. 1998).

[53]*Id.* (citing *Denton v. First Nat'l Bank of Waco, Texas*, 765 F.2d 1295, 1300 (5th Cir. 1985)).

[54]*Faulkender v. Sec. Bancshares, Inc.*, No. 06-2155-JTM, 2007 U.S. Dist. LEXIS 39876 at *10 (D. Kan. 2007)(citing *Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377 (10th Cir.

complaint to cure this omission.  As such, dismissal based purely on plaintiff's complaint could be warranted.[55]

However, both defendant and plaintiff have filed summary judgment motions with citations to facts and exhibits outside of plaintiff's complaint.  Consequently, the court will analyze plaintiff's claims in the context of summary judgment and will consider undisputed facts outside of plaintiff's complaint in determining whether exhaustion occurred.

The Plan Document and Summary Plan Description (SPD) provide for a two-level Claims and Appeals Procedure.  The Plan Document and SPD provide details regarding filing of claims and appealing adverse benefit determinations.[56] The Plan Document and the SPD both provide in pertinent part: "A claim is a request for a plan benefit made by a claimant on a form provided by the Plan Administrator . . . .  The claimant must mail or deliver the completed and executed form to the Plan Administrator for it to be considered.  The Plan Administrator shall decide the claim."[57] As to appeals, both documents provide in part

> A claimant may appeal an adverse benefit determination to the Trustees by mailing or delivering to the Plan Administrator a written notice of appeal.  No action at law or in equity shall be brought to recover any benefit under the Plan until the rights to appeal described in

---

1992)("[D]ismissal is appropriate because there is no indication or allegation that the plaintiffs have exhausted their administrative remedies" and "[p]laintiffs must first present and exhaust their complaints through the administrative procedures established by the plan. Since there is no allegation that these complaints of denials of benefits were exhausted, dismissal is justified.").

[55]*See e.g.*, *Karls v. Texaco, Inc*., 139 Fed. Appx. 29, 33 (10th Cir. 2005)(affirming the district court's dismissal of plaintiff's complaint on the pleadings because plaintiff "had failed even to allege exhaustion (or cure the omission following [defendant's] motion to dismiss)[.]").

[56]Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. 8) at (Exhibit 14) (The Plan Document); *id.* at (Exhibit 2) (the SPD).

[57]Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. 8) at (Exhibit 14) p. 55; *id.* at (Exhibit 2) p. 37.

this Section have been exercised and the benefits requested in the appeal have been denied in whole or in part.[58]

Plaintiff does not argue, and the court has no reason to believe, that the claim and appeals process outlined in the Plan Document and Summary Plan Description (SPD) would have denied plaintiff from receiving a full and fair review should plaintiff have filed a claim.[59]   Additionally, plaintiff does not refute that she failed to submit a formal "claim" *to the Plan Trustee* regarding her perceived negative benefits determination. This alone could warrant summary judgment in defendant's favor  as to the exhaustion issue[60] especially considering that courts do not generally allow "informal attempts to substitute for the formal claims procedure" because such an allowance "would frustrate the primary purposes of the exhaustion requirement."[61]

### 2.   Plaintiff's contact with the Plan Administrator does not amount to an administrative claim.

In plaintiff's "Statement of Controverted Material Facts" plaintiff contends that:

A complaint had been filed with Judy Tuck and to my knowledge not knowing whether or

---

[58]*Id.* at (Exhibit 2) p. 39; *id.* at (Exhibit 14) p. 56-57.

[59]*See* 29 C.F.R. § 2560.503-1 (requiring the appeals process from an adverse benefit determination provide claimant a fair and full review).  *See also Metzger v. Unum Life Ins. Co. of America*, No. 02-1321-MLB, 2006 U.S. Dist. LEXIS 856 (D. Kan. Jan. 11, 2006)(discussing 29 C.F.R. § 2560.503-1).

[60]*See e.g.*, *Karls v. Texaco, Inc.*, 139 Fed. Appx. 29, 33 (10th Cir. 2005)(noting that even if a motion to dismiss for failure to exhaust had been converted to a summary judgment motion, plaintiff would still not have prevailed because "the plan specifies a claim and review procedure that had not been completed by [plaintiff] when he filed suit.").

[61]*Davenport v. Harry N. Abrams, Inc*., 249 F.3d 130, 133 (2d Cir. 2001)(citing *Bourgeois v. Pension Plan*, 215 F.3d 475 480 n.14 (5th Cir. 2000)("Allowing informal attempts to substitute for the formal claims procedure would frustrate the primary purposes of the exhaustion requirement").  *See also Sandoval*, 967 F.2d 377 ("[p]laintiffs must first present and exhaust their complaints through the administrative *procedures established by the plan*.")(emphasis added).

not the Plan Trustees had been contacted about my pension dispute (referencing Defendant's Undisputed Fact # 18).  In fact, continuous telephone calls were made and written letters to Judy Tuck regarding the disputed issue many times, prior to the filing of the lawsuit.  In fact, Ms. Tuck was aware of the disputed issue, but she did nothing, or make any attempt to resolve the dispute, or make any modifications or amendments to my pension account.  Ms. Tuck had an abundance of time for any changes to (my) pension prior to the lawsuit.[62]

The court, in broadly construing plaintiff's statement, finds that plaintiff seeks to have her communications with Ms. Tuck construed as submitting a "claim" to the Plan.  Yet, even if the court were to excuse plaintiff from following the official claim process outlined by the Plan Document and the SPD, plaintiff's letters to the Plan Trustee could not be construed as "claims", nor could the Plan Trustee's responses amount to "denials."  Plaintiff's June 16, 2006 letter states "[T]he purpose for my *inquiring* is that my monthly pension seems to be a low amount and supposedly is based upon my social security. . . .  I trust you will promptly *respond* to this matter."[63]  On October 2, 2006, plaintiff submitted to defendant a 'Pension Info Request" form under "Additional Information" stated in part: "Level Income Option . . . Wants the calc that was done to figure . . . benefit.  Is *trying to figure out* how we arrived at $518.38; does not compare? to S.S."[64]

Considering the wording of plaintiff's June 16, 2006 letter and the October 2, 2006 form, the court agrees with defendant's characterization that they constitute "merely inquiries as to how the Plan determined the $518.38 monthly payment amount."[65]  Additionally, Ms. Tuck's letters to

---

[62]Memorandum in Support of Plaintiff's Motion for Summary Judgment (Doc. 18) at p. 9.

[63]Memorandum in Support of Plaintiff's Motion for Summary Judgment (Doc. 18) at (Exhibit G)(emphasis added); Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. 8) at (Exhibit 9) (emphasis added).

[64]Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. 8) at (Exhibit 11) (emphasis added).

[65]Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. 8) at p. 10.

plaintiff on June 23, 2006[66],  October 16, 2006[67] and October 24, 2006[68] provide the information

plaintiff requested, i.e., they seek to  explain how the Plan determined plaintiff's $518.38 monthly

payment.  The court also agrees with defendant's argument that to the extent the court might

consider construing these letters as "claims" and the Plan's responses as "denials" plaintiff still

never filed an appeal.[69]

### 3. Plaintiff's contact with those outside the Plan did not amount to a claim or administrative review.

Plaintiff's "Statement of Controverted Material Facts" also argues:

> Administrative relief has been sought by contacting Cher Jarosz, U.S. Department of Labor on several occasions (see Exhibits F & I), also having submitted a personal comment to the Internal Revenue (referencing Defendant's Fact # 7 & Fact #24).[70]

Plaintiff did send several letters to the U.S. Department of Labor and sent a letter to the

I.R.S.  However, sending letters to the U.S. Department of Labor or the I.R.S. does not fulfill the

exhaustion requirement in ERISA of placing the primary "responsibility for claim resolution on *fund*

*trustees.*"[71]

Moreover, while it does not directly bear on the issue of exhaustion, the representatives for

---

[66]*Id.* at (Exhibit 10).

[67]*Id.* at (Exhibit 12)

[68]*Id.* at (Exhibit 13)(where Ms. Tuck provides plaintiff with request for documentation of calculation of benefits).

[69]Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. 8) at p. 9.

[70]*Id.* at p. 10.

[71]*Whitehead v. Oklahoma Gas & Elec. Co.*, 187 F.3d 1184, 1190 (10th Cir. 1999) (emphasis added).

the U.S. Department of Labor expressly informed plaintiff that her contact with them did not fulfill her obligation to exhaust under ERISA.  Specifically, representatives from the Department of Labor informed plaintiff "the Department of Labor has *no authority* to rule on the adequacy or accuracy of the amount of your benefit" and explained

> ERISA requires employee benefit plans to set up written *procedures* for participants and beneficiaries who want to file claims for benefits.  These requirements are described in the enclosed pamphlet.  If you feel that you are entitled to additional benefits, you may want to *file a written claim with the plan administrator* or other appropriate plan official.  If you believe your rights under ERISA or your plan have been violated, you may wish to seek assistance from a lawyer or a legal aid organization.[72]

**4.      The narrow exceptions to the exhaustion rule do not apply in the instant case.**

The court, in its *discretion*, may eschew exhaustion under two narrow circumstances: (1) when resorting to administrative remedies would have proved futile, or (2) when the remedy provided is inadequate.[73]  The standard for the futility exception is limited to cases where the use of administrative procedures would prove "clearly useless."[74]  The futility exception requires a showing that plaintiff's administrative claims would have been denied on further appeal, and "not just that [a plaintiff] thinks it is unlikely an appeal [would have resulted] in a different decision."[75]

---

[72]Memorandum in Support of Plaintiff's Motion for Summary Judgment (Doc. 18)  at (Exhibit F)(emphasis added).  *See also id* at (Exhibit J) (Letter from U.S. Department of Labor Representative to plaintiff dated August 18, 2006 and providing in part "Although we understand your concerns, the Department of Labor does not interpret plan documents or determine whether individuals are entitled to benefits.  *That is the responsibility of the plan administrator or other appropriate plan official*.  If you still disagree with the *Plan's decision*, under ERISA you have the right to bring suit.  You may wish to seek assistance from a lawyer or legal aid organization.")(emphasis added).

[73]*McGraw*, 137 F.3d at 1263.

[74]*Id.*

[75]*Muller v. Am. Mgmt., Ass'n Int'l*, 315 F. Supp. 2d 1136, 1140 (D. Kan. 2003)(citing *Getting v. Fortis Benefits Ins. Co.*, 5 Fed. Appx. 833, 836 (10th Cir. 2001)).

The relevant inquiry asks whether the events alleged by plaintiff in the instant case amount to an "'unambiguous application for benefits and a formal or informal administrative decision denying benefits [such that] it is clear that seeking further administrative review of the decision would be futile.'"[76] Courts have held that a "putative 'denial' of benefits" contained in a letter to the plaintiff did not "render futile further pursuit of her claims through the proper channels."[77]

Here plaintiff fails to plead in her complaint, or to argue in her response to defendant's motion, that an appeal of defendant's alleged adverse benefits determination would have proven futile or produced an inadequate remedy.  In the instant case plaintiff did not file a formal claim to begin with, and plaintiff's contacts with the Plan Administrator did not constitute an "unambiguous application for benefits" nor did Ms. Tuck's responses to plaintiff's communications amount to a "formal or informal administrative decision[.]" Thus, the court would be hard-pressed to find that an appeal of a claim plaintiff never actually, or even informally, raised would have proved futile.  As a result, the court finds the narrow exceptions to ERISA's exhaustion requirement inapplicable and finds plaintiff failed to exhaust her administrative remedies.  As such, plaintiff's claims should be dismissed.  Because the court finds that plaintiff's claims should be dismissed for failure to exhaust her administrative remedy, the court need not rule on the merits of plaintiff's claim(s).

Accordingly, and for good cause shown,

---

[76] *Id.* (citing *Davenport v. Harry N. Abrams, Inc*., 249 F.3d 130, 133 (2d Cir. 2001)).

[77]*Davenport*, 249 F.3d at 133 (citing *Bourgeois v. Pension Plan*, 215 F.3d 475 480 n.14 (5th Cir. 2000)("Allowing informal attempts to substitute for the formal claims procedure would frustrate the primary purposes of the exhaustion requirement"); *Barnett v. IBM Corp*., 885 F. Supp.  581, 588 (S.D.N.Y. 1995)("If an informal or unsubstantiated denial of a "claim" that was never filed  or formally presented is reviewable in the federal courts, then, in such situations, the courts and not ERISA trustees will be primarily responsible for deciding claims for benefits.")).

IT IS THEREFORE ORDERED that defendant's Motion for Summary Judgment (Doc. 7) is granted and plaintiff's claims are dismissed.  Defendant's Motion for Leave to File a Surreply (Doc. 22) is granted.

IT IS FURTHER ORDERED that plaintiff's Motion for Summary Judgment (Doc. 17) is denied.

IT IS SO ORDERED.

Dated this 14th day of September, 2007, at Topeka, Kansas.

 s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge